DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

SAILAJA M. PAIDIPATY (NYBN 5160007)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    sailaja.paidipaty@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> STEVEN VU, <br><br> Defendant. | NO. 19-CR-0130 VC <br><br> **UNITED STATES' SENTENCING MEMORANDUM** <br><br> Judge: Hon. Vince Chhabria <br> Sentencing Date: March 9, 2020 <br> Time: 2:00 pm |

## I. INTRODUCTION

Through an elaborate scheme, Stephen Vu helped import tens of thousands of MDMA pills from abroad into the United States. Using fake names and identification cards, Vu set up a series of mailboxes at private mail facilities around the Bay Area, to which the drugs were shipped disguised in vitamin bottles and cat litter. Vu collected the boxes of MDMA pills and brought them to his home to prepare them for resale. In total, Vu possessed 20 kilograms of MDMA for resale. As described in greater

detail below, illegal pills imported from abroad present a serious danger as dealers can't confirm the chemical makeup of what they are peddling. Vu's actions endangered the community and the United States respectfully requests the imposition of a 78-month sentence (the low-end of the advisory Guidelines range), followed by three years of supervised release, and a $200 special assessment.

## II.   FACTUAL BACKGROUND

The government agrees with the factual recitation in the Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office ("Probation"), and encourages the Court to adopt it. The government's argument below focuses on key facts described in the PSR that the Court should consider in determining an appropriate sentence.

## III.   SENTENCING GUIDELINES CALCULATIONS

As set forth in the parties' written plea agreement, the parties agree to the following Sentencing Guidelines calculation:

|     |                                                                                                           |      |
| --- | --------------------------------------------------------------------------------------------------------- | ---- |
| a.  | Base Offense Level, U.S.S.G. §§ 2D1.1(a)(5), (c)(5):<br>(At least 100 KG but less than 400 KG of Converted Drug Weight) | 32   |
| b.  | Safety Valve, U.S.S.G. §§ 2D1.1(b)(18), 5C1.2                                                              | - 2  |
| c.  | Acceptance of Responsibility:                                                                              | - 3  |
| d.  | Adjusted Offense Level:                                                                                    | 27   |

The government understands that Probation disagrees with the parties' calculation. The parties are bound by the plea agreement and the Guidelines calculation recounted above.

Under the First Step Act, the defendant is eligible for relief under the federal safety valve because none of his prior convictions score above one criminal history point. At sentencing, a defendant must establish compliance with the safety valve requirements by a preponderance of the evidence. *United States v. Diaz-Cardenas,* 351 F.3d 404, 409 (9th Cir. 2003). Should defendant satisfy his burden, the government can rebut the showing by demonstrating that the information proffered was untrue or incomplete. *Id.* Here, the parties met for proffers on three occasions. Vu lied to undersigned counsel and federal agents during his first proffer. During his second proffer, Vu admitted lying and proffered some information regarding the underlying offense, however, declined to answer certain

questions related to the conduct.  Based on those proffers, the government informed Probation that it believed the requirements of the safety valve were not satisfied based on incompleteness.  The parties sought a continuance to allow for a further meeting.  Following a third proffer, the government no longer contests the application of the two point reduction for the safety valve.

The government agrees with Probation's determination that Vu is a Criminal History Category II.  The Guidelines range for imprisonment associated with adjusted offense level 27 and Criminal History Category II is 78 to 97 months.

**IV.    GOVERNMENT'S SENTENCING RECOMMENDATION**

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2).  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  The Court should begin by calculating the correct sentencing range under the Sentencing Guidelines.  *Id.*  The Guidelines are "the 'starting point and the initial benchmark,'" *United States v. Ellis*, 641 F.3d 411, 415 (9th Cir. 2011) (quoting *United States v. Kimbrough*, 552 U.S. 85, 108 (2007)), and the Court should "remain cognizant of them throughout the sentencing process." *United States v. Gall*, 552 U.S. 38, 50 n.6 (2007).  After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a).  *Carty*, 520 F.3d at 991-93.  Here, the most important considerations are the nature and circumstances of the offense, the need to afford adequate deterrence, and the protection of the public.  18 U.S.C. § 3553(a)(1), (a)(2)(B)-(C).

Vu's crime required planning and deception.  He opened five private mailboxes in false names all over the Bay Area, and fabricated insurance cards as means of secondary identification.  (PSR ¶¶ 9, 11, 13.)  The imported pills were hidden in seemingly innocuous packaging with fraudulent labeling.  (PSR ¶ .)  Vu took intentional steps to avoid getting caught by law enforcement by using the fake names and opening boxes in different cities.  He knew what he was doing was illegal and attempted to minimize his risk of getting caught.

The volume of pills seized from Vu's home and the other post boxes shows no small time drug trafficking.  Agents seized over 3,000 pills from Vu's apartment and approximately 20 kilograms of

MDMA overall.  (PSR ¶¶ 11, 13.)  The drugs seized are worth in the tens of thousands of dollars.  Vu stood to profit handsomely from the sale of the pills.

Additionally, Vu's conduct involved importing drugs from abroad, which introduces untested synthetic pills into the community.  In speaking with a journalist regarding trends in the seizure and testing of MDMA pills, a DEA laboratory director commented, "When we test [the pills], we see a variety of different drugs. There's no quality control on the street when it comes to drugs. On these seemingly ecstasy tablets we have we found MDMA, methamphetamine, ketamine, caffeine. So, if you think you are getting ecstasy, you are not quite sure what could be in that tablet."  Bair, Dina and Czink Katharin.  "Parents Whose Son Died After Taking Ecstasy Want to Educate Others On Dangers of Drug. WGN CHICAGO.  https://wgntv.com/news/parents-whose-son-died-after-taking-ecstasy-wants-to-educate-others-on-dangers-of-drug, last updated Feb. 7, 2019.

Though in popular culture MDMA may be viewed as a harmless "party drug," studies have shown its adverse effects, particularly through long-term use.  The National Institutes of Health report that "MDMA can [] stress the heart, increasing heart rate and blood pressure, and can damage the kidneys."  MDMA (Ecstasy) Abuse.  NAT'L INST. OF HEALTH.  Available at: https://www.drugabuse.gov/publications/research-reports/mdma-ecstasy-abuse/Introduction, last updated Sept. 2017.  Long-term use is associated with cognitive deficiencies.  *Id.*  In recent years, a college student committed suicide after experiencing depression and withdrawal symptoms after taking MDMA purchased in San Francisco.  Bair, Dina and Czink Katharin.  "Parents Whose Son Died After Taking Ecstasy Want to Educate Others On Dangers of Drug.  WGN CHICAGO. https://wgntv.com/news/parents-whose-son-died-after-taking-ecstasy-wants-to-educate-others-on-dangers-of-drug, last updated Feb. 7, 2019.

Without minimizing the seriousness of the offense conduct, the government recognizes that Vu has no prior convictions for drug trafficking, his criminal history is limited to misdemeanors, and he previously has not served a significant prison sentence.  The Court should consider these circumstances when weighing the § 3553(a) factors.  On the other hand, the Court should also take into account the weight of the drugs involved here and the knowing and deliberate steps Vu undertook to import and

distribute the MDMA.

## V. CONCLUSION

The government recommends that the Court sentence Vu to a 78-months sentence (the low-end of the Guidelines range), three years of supervised release, and a $200 special assessment.

DATED: March 2, 2020

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

_____/s/_____
SAILAJA M. PAIDIPATY
Assistant United States Attorney

UNITED STATES' SENTENCING MEMO.
NO. 19-0130 VC

5